It's 21-405-74 U.S. v. Sepulveda Good afternoon, my name is Carlos A. Garcia and I represent Matthew Lee Sepulveda in his appeal of his conviction and sentence out of the Southern District of Texas McAllen Division. With the court's permission, I'll orally argue points of error 3 and 4 and rely on our brief for the remaining points of error. You may proceed. I may, I'm not remembering by number so I may have some questions on the other ones but I always do. Your Honor, Mr. Sepulveda alleges that the government's lack of diligence in producing, we believe, Brady evidence as it relates to a key witness against him as to count two in the indictment, A.A. The government, as the court is well aware, A.A. had been arrested for a sexual assault. Defense counsel did not become aware of that until after the verdict. Then after the verdict moved for, filed a motion for a new trial under Rule 33 requesting or lack of a confrontation issue as it relates to a Sixth Amendment right. And that motion was withdrawn? As far as I can tell it wasn't reasserted until orally at sentencing, is that correct? It was and the court. It was meaning it was withdrawn and then it wasn't re-urged until sentencing? Correct. That is correct. There were no new facts in between the time that it was, right, actually I substituted and I asked the court for time. Yeah, I saw that but am I correct when you do object at sentencing it is to make what I think of as a it wasn't to say I need discovery and it wasn't to say I need a hearing on this. You said the existing record, am I correct? The existing record supports reversing the conviction here because what wasn't disclosed undermines the confidence of the outcome. That's, that's your argument to us today. Yes, it is. Okay. And that's our argument because of the fact that defense counsel was never allowed the opportunity to properly cross-examine the witness as to his motive or bias in relation to, we understand that it's likely not admissible under 609 and that because it wasn't a final conviction but the fact that he had a pending state case for a sexual assault we do believe was relevant to at least the witness's state of mind while he was being It's a difficult, unfortunate issue. You don't deny the government was the one who acknowledged this. They brought it to everyone's attention. Yes, your honor. At least at the time that they did and you didn't ask the judge we need more investigative, we need to have a hearing on this. We need to find out when exactly the government knew about his prior arrest record. Well, I think the government, the government cited that in the, in the record the government does acknowledge that they became aware of it from the AA's mother after the verdict. Okay, I mean I don't mean to talk too much but I'm curious because so they would have given you extensive Jenks material under Rule 26 all about their lead victim witness and they would have given you FBI 302 and none of that indicated he'd been already arrested for months? None. None of it indicated that he had been under arrest for months. Okay, so, so you may have made out a case, I mean we'll hear from the government that the Giglio material was not turned over and they had knowledge of it because attributed to them from the victim witness coordinator but you still have to get to Kyle's materiality that a failed impeachment question and there were two equal independent victims against your client. Well, there were two equal independent victims but AA was the victim in count two which is the count where he was sentenced to 30 years. I see. So he is the only victim or the only witness who testified about what occurred at the police station when he and Mr. Sepulveda were alone where there were no cameras. You know looking at other cooperating information or other cooperating evidence for that particular witness when we look at the elements under Jimenez. Jimenez cites to Van Andersol as it relates, Arzdahl, Van Arzdahl, as it relates to the the the factors when looking at a violation or a confrontation violation as to whether there's other cooperating information as to the testimony of AA and there is no other cooperating information as to the Arguably, we'd say there was no other cooperating information as to what he testified about what occurred when he was alone with Mr. Sepulveda in the office. There is cooperating information about his testimony when he was taken out of the jail cell, when he's taken it through the hallway. Can you talk up a little bit? Yes, sir. When he's taken through the hallway when he is but when he's in the office alone with Matthew Sepulveda there is no cooperating information other than his Well, I mean there's there's the other offense which occurred a couple days before, correct? Correct. The same kind of conduct basically alleged. Yes. There's the brother's situation. I can't remember, did he testify at trial, the brother, the young, was it a younger brother? I don't remember. But he was in the cell, the one that was left in the cell and then when AA came back I guess he said warned his brother to not go and not do or I mean. Stall, correct. Yeah. So I don't know you'd said that the evidence that wasn't produced, the Giglio evidence, was relevant. Talk a little bit more about how it was relevant. Well, it's relevant as to the AA's state of mind as to why it is he would be testifying, whether he's going to slant his testimony in one way or another, knowing. So how so? If I know I'm under, if I've been arrested and booked, fingerprinted, photographed by law enforcement. And it also goes to contradict his testimony. When he's asked by the United States Attorney about his experience with law enforcement, he denies any experience with law enforcement. In fact, he's kind of careful about the way he does it. Is there, is there something, something, somehow in my mind there's an issue about whether the question he was actually asked was mistranscribed or versus for, am I making that up? Or in other words, could the question he was asked about his prior experience, have you ever been arrested or anything like that? Um, is it ambiguous? In other words, could he have been answering as to past conduct at the time this incident that's at issue here? Or was he asked more generally? I'm sorry, I can't remember the exact question. I believe I do have it. I think I quoted the question or I quoted his answer. Uh, have you ever been arrested or anything like that in the past? Hat tip to my colleague, Judge Higginson, for pulling it out of his notebook. And he says in the past, no. Yes, in the past. And so, so I get your, I'll give you the argument you, you want to cross him and say, oh, you're, you're not being accurate because you have been arrested. And we don't know what that exploration would have yielded. But as far as state of mind, more, more broadly than that, is there more? Well, more importantly, Your Honor, um, or from our perspective, witnesses, uh, motive for testifying, a bias that he may have if he testifies in a certain way. Uh, if he gives answers to the prosecutor the way the prosecutor seeks them, um, in his mind, whether there was a deal or not is immaterial. The question about what we didn't even know about it and there was no deal. I don't believe it's even material. I think it's important to focus on the idea of what the witness's state of mind was. Do we know anything about his state of mind? I'm sorry. Do we know anything about his state of mind? Well, that's the problem that we were not able to drill down in his state on his state of mind when he's being questioned because we don't even know about his arrest. Isn't it true that you're afraid that you might get prosecuted for something or you might get prosecuted more severely because of depending on how you go through. If we look at the record, take his answer because you wouldn't be able to offer the correct, correct understanding. But I mean, just, you know, on direct, we go from page record on appeal, page 4 57 to 502. Defense counsel's cross was 502 to 505. It's like 2.5 pages. And in effect, what defense counsel did is he just asked, Were you out at night with some girls? Was there marijuana? Really doesn't drill down on anything as it relates to. Well, certainly undisclosed favor to not prosecute somebody is significant. Um, and your point is, even if it's just in his mind, but I'm just gonna ask you, what's your best case applying Kyle's right or or our case law applying it? Um, that would actually reverse a question. Opportunity, Your Honor. It's our position that the court should should grant a new trial. I know and allow. But it's not something I mean, I'm not justifying it. The government's got its opportunity to answer. It's not exculpatory evidence. It's you were unable to ask a question that you may have had a good faith basis to ask. You wouldn't have been able to offer extrinsic evidence, probably so. So what's the case where that is undermines the confidence of the outcome? Well, I believe there is a case in the line of cases. Okay, it's there. There is a line in the line of cases, but not included in our brief. And so I won't mention it. Um, but it is cited. Oh, okay. You're This is a confrontation clause. Yeah. Okay. All right. Um, fine. You're saying it's in the brief. You've got You've got case law that supports that just because your time's ticking away. When you say you were gonna reach one other issue, is that the commenting on the silence? Or what was your other issue? No, Your Honor. Just that the fact is the only one you were just the only one that the court didn't grant a new trial as it relates. It points three and four did not relate. We can't touch on the right to remain silent if we can't for the last four minutes. Well, I guess that that is a difficult issue, I think, for district judges. Generally, your client invoked his right to not allocate. No comment. Yes, sir. And then the district judge says, Boy, I wish I'd seen some remorse. Yes, you are. And so that's you're applying Mitchell to that. We are. Because the last paragraph of Mitchell states that they don't. You know, the Supreme Court did not hold that it didn't apply or or or that this right to remain silent applies when the court is is considering a lack of remorse. And so we're asking the court to find that that in this case, I mean, the judge says it on the record that because he remained silent, he did not. You know, he didn't hear any kind of allocution from him. There was nothing. And he just said, you know, no comment, no comment. And the judge said, you know, something for the victims. Anyhow, you're saying that the court did draw an adverse inference from silence. I am considering considering the the objections that were made at sentencing. I am. I understand that he was subjected to a life sentence, and he sentenced him to 360 months. But we think, given the facts of this case, in comparison to other cases, a sentence of 360 months for a young man that has no criminal history was unreasonable. It isn't he. He was silent, right? Yes, sir. He was. And what is the evidence that you would point to that the court drew an adverse inference from his silence when the court states that he he takes that he states that he didn't that he showed no remorse for his actions by by, uh, he said record on Appeals 6 45 to 6 46. I'm disappointed that you didn't take the opportunity to at least apologize or show any empathy towards what happened to these young men. I mean, you saw them testify. These individuals were very candid and truthful, testifying. I'm disappointed to me that you didn't at least show some empathy towards them. I understand that you need to preserve your Fifth Amendment rights because of appeal, but that wouldn't have prevented you from watch them. So that's the portion of the record that I would I would look at 6 45 to 6 46. We don't have any controlling law in this area, do we? It's it's in line because defendants can't allocute. And if if they don't show remorse and victims can speak, a district judge can enhance. Yes, Your Honor. So what would be the rule of law? You would announce that a plot Mitchell applies so the judge can't even talk about remorse. Given the facts of this case, I don't know about other cases, but given the facts of this case, the fact that our client did not testify at his trial that he intended to appeal, um, that that Fifth Amendment privilege continued to protect and to shield him from some sort of adverse punishment as a result of his silence. Now, what if I say sequentially the district court had already chosen the prison amount before that little colloquy occurs? And I don't think I'd have an argument. But that is what happened, right? Does it? Don't don't conceive that that quickly. I mean, sequentially, he says this is what you're gonna get. It's a downward departure. Then at the very end, there's this. Where's the remorse for these kids? So it seems a little disconnected. And after the fact, yeah. Well, I think the court didn't need to offer that. I agree. And I think he offered it. Um, if if he doesn't offer it, we're not here before your honor arguing what we're arguing. We wouldn't have known. And so many times we're left with what a district judge is thinking. And all we have to go by is what's on the record. Thank you. Great. Thank you very much. You have rebuttal time. Yes, ma'am. Miss Aikens. You're you're free to start where you want to. But since we were just talking about this adverse inference, uh, if it was what the outcome, uh, what would the outcome be under our precedence? So that's a wonderful question. I think, um, when you're talking about the lack of remorse, the best case that shows the government's position is the Navarro case. So there's several Fifth Circuit cases that have come since Mitchell that have shown these kinds of statements can be used as a factor. And I think what's interesting that Judge Higginson, um, hit off the bat was the sequential order of things. If you go back and look at the record, as the judge is going through all the 3553A factors, he talks about, um, the egregious acts that happened to these victims. He's well aware of that. But then he also talks about the defendant's age. This defendant is 25 years old. And so he's in that a little bit. I'm sorry. He's in that spot where he's looking at both sides. He's looking at this defendant under the factors. He's looking at the community and these Children. And so what's important, I think, is he was given a downward variance. But also the statement was made later. It was not given in the colloquy about the 35. These arguments are sort of are plain error arguments, and it is being reviewed only for plain error. Is that correct? On on the substantive reasonableness on the lack of remorse? Well, had had an objection been made, a district court would be able to say, Now I'm not punishing you for this. You're right. But we're sort of guessing we are. But I will say there. So I guess. But then, if you agree and they agree, everyone agrees that we're reviewing for clean air for plain air. The first question is, was there error? And does the government is the government able to point to case law? I don't know about Navarro, but I assume the defendant actually allocated and therefore showed no remorse in the allocution. What's your best case where a defendant does stand on their right to not speak? And yet the court says, I don't hear any remorse. Here's the punishment. So most of the cases do have to do with the defendant pleading guilty. And so it's a little bit different. The Simpson case from this court has to do with the trial within the defendant doesn't want to speak. Um, the Navarro case is a little bit more victim oriented, where he just minimizes his right back. It's a little bit different. Speaks a trial or allocated sentencing. I think it's fair game because they aren't standing on their right. But if you should tell me if you agree or disagree, Mitchell does apply to sentencing. Yes. Okay. And do you think, do you think a district judge can say, Oh, if you're not going to comment, that gives me no sense of remorse. I'm going to punish you more. Is there some line you're urging between silence and remorse? Right. You can't comment on silence. You can't punish for silence, but you can for lack of remorse. Is that I think this is reminding me of Scalia's dissent in that Mitchell case where he says we're grappling with this fine line on your Fifth Amendment rights versus remorse and that lack of remorse can be commented on. It can be a factor. But in this case, it's a minor, minor factor. It isn't even listed in the statement of reasons under the 35 53 a factor. And I think the biggest difference in this case than the cases we've given you is this defendant got a downward variance. So hanging your hat on the argument that this one side comment that was made later during sentencing that maybe shouldn't have been said, but was, um, this is a very emotional case. You can see all these things have been said, but when you are interpreting that to be, there isn't a clear rule of law, the government's urging or other circuits have taken. But in this case, since it's subject to totality of the circumstances. Yes, Your Honor, I believe that's true. He just said it as an afterthought. It wasn't included in the reasons, and he wasn't given a harsher sentence. So to say that affected a sentence that he had already been given isn't really logical in our mind. You've got 15 minutes, and I may want and colleagues may want to take a lot of that time with this giglio problem. I understand. Am I correct? In this timeline, a lead government victim witness is arrested months before the trial. Then he testifies for the government. After he testifies, the federal prosecutor calls an assistant district attorney. And after that call, the grand jury no bills. Is that a correct timeline? Your Honor, that is correct. I will note that when the this is part of the sentencing hearing, when the federal prosecutor called the state prosecutor in charge of that state case, she was told it was in a set of cases that was scheduled to go to grand jury. So there's nothing to indicate our interference. Push the case along. But that is what we were told. It was about to be presented. And then a week or two later, we were told that it had been no built. Well, I would think you would want to cross examine on that a lot. I understand. Um, it is. It's a regrettable oversight. I'm not here to the way that we practice law. It was a regrettable mistake. This case has fake is the knowledge of the arrest is attributable to the government, and they didn't disclose it. Correct. But the mistake is also when he testified for the government, and he's asked by the government, Have you ever been arrested? He lied. He said no, and the prosecutor did not correct him. That's a NAPU violation, right? Two things. One, the prosecutor couldn't have corrected him as she had no knowledge. Okay, I'm gonna I Okay, that's that point. Well, I have. Okay, well, as an officer of the court, knowing this record, you're telling me the lead victim that the FBI had been talking to in the USA had been preparing. Nobody in the federal government knew that victim had been arrested. Is that your statement to us at that time? That is what the record shows your honor. It shows as an officer of the court. That's also what you're representing to us. I'm telling you what's in the record. That is all that was known at the time, I believe. So just to be clear, the special agent that is working with the lead victim and an assistant U. S. Attorney, none of them knew their lead witness had been arrested for months. I can't speak on behalf of the FBI. There's no evidence. Well, anything the FBI knows is attributed to you. I understand that. Um, you have to speak on behalf of the FBI. So our knowledge we were we were unaware. I think everything in the record shows that. Okay, so the 302 the Jenks material, none of that, none of that reflected an arrest and the victim never told anybody they've been arrested. Correct. And there are no good excuses for this. But the timeline does explain why this was done prior to the case getting reset eight times during 2020. And she admittedly said after the discovery was given in January 2020, he didn't pick it up until September 2020. We do have an ongoing duty, but she never circled back to ask those important questions again. Because boy, would a defense attorney to the lead incriminating what you just want to say. Didn't you just lie on direct when you said you have no exposure to the government? You said you haven't been arrested, but in fact, you just lied. You have been arrested and you're still waiting to find out what happens. And then a call from a case is no build. That part has been explained, Your Honor. I think the judge in this case asked them if there's any evidence of collusion between the state and the federal government. The answer was no, but there was a call to inquire. That is what the call said. Everyone had the right to ask more questions. They went through it at sentencing, and then after that, that is when they withdrew their motion. Did you notice the district court of sentencing asked the prosecutor almost no questions. The prosecutor never went on record saying that call did not involve right. The district court that she did at sentencing. I know there's two hearings. There's there's the original one in March. There's nothing. Sentencing hearing. Prosecutor was very quiet, and I admit they didn't object to that. They didn't ask for a hearing. They didn't ask for discovery. Could have asked further. I agree there could have been. There could have been a better record. We could have flushed these issues out. But I would like to circle back to what Judge Wilson spoke about earlier is possibly that was an ambiguous question because of the phrasing in the past. Possibly that did mean before this event in this. The evidence shows he was arrested after the fact. Have you ever been arrested or anything like that? Where's there any ambiguity? The witnesses? No. In the past? No. In the past. But the arrested already happened. That's the past. That's a false statement from the lead government victim, and the government doesn't correct it. And even then, that's on the premise of catching the lie. It's not doesn't do anything to the premise of whether the witness was motivated to testify one way or the other. You're right, and there's no evidence of that. I've given you several cases that show in our briefing that even if the witness thought it would give him a reason, there are a lot of different case line that show some of that doesn't even get past a Brady violation just because a witness happens to believe something. I think we can infer. Obviously, the prosecutor couldn't have lent him any support when she didn't know. What are you saying in terms of the witnesses belief that the government might help him or something like that? Oh, I see. Um, there can't. I mean, it doesn't logically make sense that if she did not know about it, she was going to be helping him out. Um, when you talk about motivation of him testifying, you would agree whether or not an arrest is admissible or not for it still could be legally a Brady. Oh, of course. I agree. And I think that really, to be honest, that's the strongest argument, not that this piece of evidence would have been admissible because the rules and the case from the circuit doesn't support that. It really is more what would this disclosure have led to? And I understand that as a practitioner. I think that actually is a more valid argument. Um, and I I think the more I've looked at this and grappled with it, I keep coming back to this Lee case that came out several years ago from this circuit that talks about when you're grappling with this issue, and it's not just that you didn't tell us this happened. What could we have learned from this piece of evidence? And what this circuit said in that case is we're talking about materiality. The big question is, is this going to undermine the confidence in this verdict? And when you're looking at that question, that's so important for a motion for new trial. The Lee case says you can look at the corroborating evidence. Okay, and that's where we were asking. Post cover. His answer is as to count to where he gets virtually the life sentence. This was the testimony. It was. I think you know, are you arguing against yourself? You're just being candid and honest with us that this was devastating impeachment as to. I don't think it was devastating. In this case, what I'm saying is a practitioner. I sure do understand how that could have led to something. I appreciate the candor, but that's so the government saying you're just acknowledging this is a very difficult issue. Then, of course, Your Honor, it is. This is a we take this case very seriously. This is not ultimately is it material here, and that's what this court is here to determine. And so what makes this case different is the evidence. Talk about the corroborating evidence. Sure. So there really wasn't any instead. Jigginson was eluding. Yeah. So in addition to the two witnesses, I could spend 20 minutes on that. But the similarity of their testimony, their ages, the police station, the questions that were asked the acts all of that together does corroborate each other. But in addition to these two kids that told these stories, we also have the police surveillance video from the station. It corroborates the timing. The kids where they were, what room things happened in, how long they were in those rooms. Additionally, we have evidence from two separate cell phones. We have the cell phone of the first victim, CL. His screen shots from his cell phone show him reiterating this story to his girlfriend. Within hours of it happening, telling the exact same story. The second cell phone is from the defendant, Sepulveda, and that shows the time of the offense with the second victim, AA, and that he was pulling up the pornographic websites during the sexual assault to that kid at the exact time they were in the room from the kid's testimony. In addition to that, we have the last piece of evidence that was so bizarre was the defendant's story about the chase with the second complainant. So Officer Rivera sees two things. One, the evidence of the kidnapping, which is why that second case is so elevated, when all the other kids are allowed to go home with other parents, but these two kids are forced to stay at the station. So you have that officer corroborating something is not policy, this is not how we do in our department. Secondly, he can corroborate those children went with him. And then you have the corroboration from a custodian of records at the West Lico PD that says there was no police chase that night. And Officer Rivera also testifies he was told to stay away from the station, to leave that defendant with those boys, to go out and look at some car chase. For 30 to 40 minutes, he was gone and no car chase occurred. That's a lot, a lot of evidence and all of that corroborates both of these victims. So to say that there possibly was a piece of evidence that might have come back, I think it's highly unlikely. I think if you look at the decisions and Abu Dhabi and Newman and Lee, they all stand for that proposition. When we're looking at the big picture, when we come down to it, is this going to change the verdict and undermine confidence? The state offense that A. A. Was arrested too. Was it? What was it? Do you know? I believe it says sexual assault. I have no other details than what was stated in the record. So he was alleged to be a sexual. Yes. And the federal case was not a task force case. State federal joint was it? No. There's no suggestion of the A. D. A. And not at all. And none of these parties knew each other. The complainants didn't know each other. These case. Nothing about this is connected. It incident happened after this incident, right? Correct. You're on the state incident for that victim happened in January of 2020. And our offense occurred late June of 2019. If you don't have any other questions for me, I can give you back your time. Thank you, Counsel. Thank you. Garcia. Yeah. Her list of evidence is long, and it wasn't her brief. You didn't file a reply brief. So it's a little hard for us to do the materiality where you have. You've only got four minutes, 50 seconds to say why that isn't a lot of overwhelming evidence. You didn't follow the library, right? No, I did not. But I think I can. I can do it. Go ahead. C. L. Everything she described is that is that relate as it relates to A. A. Has nothing to do with seat with C. L. S. Testimony seals testimony. She keeps referring to them as boys. C. L. was 20 years old. A. A. Was the only juvenile. He was the 17 year old. Everything that she testified about Officer Rivera about the car chase that all relates to A. A. Right. But that would come in. That would come in relevant to state of mind. Absence of mistake, right? All that testimony be able to be used by the jury on as to count to or my wrong. Yeah, it would. It would be allowed. It would be allowed to come in. But the question was about corroborating evidence as to what A. A. Said about what A. A. Testified to the only person in the room with A. A. As to what the criminal acts involved here was Mr Simple with that. No one else. So it gives great graphic detail about the assault of him. It is equal pattern in practice. This is someone else that just testified and you're saying if you've been able to ask A. A. Aren't you hoping for favor in a totally different state criminal matter? In addition to that, the government also said that these these people didn't know each other had nothing to do with each other. This case actually started as a sheriff's office investigation. The federal case, the federal case. It's a sheriff's task force officer is the one that first goes to progress in the record. It's in the testimony. It's in the testimony of hold on. Um, so how could they possibly not have known? It's in the record. I mean, the officer, the sheriff's, the sheriff's deputies are the ones that executed the search warrant. It was a state search warrant. Federal case was a joint state was a joint case. Correct. And the state have the victim in custody. Correct. The federal government's denying they ever knew that correct. And A. A. In addition, A. A. You were the one in sentencing and you didn't ask for any discovery or you didn't ask for an evidentiary hearing. I did not. A. A. Reached out to did not reach out to law enforcement. Law enforcement sought him out. Okay, I don't. We don't know what his motivations were. We don't know. I mean, for all intents and purposes, he would have lived on his lived his life on without ever having complained about it. It wasn't until the sheriff's office reached out to him where they went through the surveillance and the logs where it had names of who would have been detained. And then they went and found him. Okay, so to respond to her arguments about overwhelming guilt. Correct. You're saying all of it relates to the other count. It all relates to C. L. But not necessarily to not to A. A. What happened in in the office where there were no surveillance cameras where no one else was there is totally on the shoulders of A. A. S. Testimony. Not really. What about the telephone records? What about the telephone? I don't understand the question. Search history that reveals pornographic information on the defendant's phone during the time they're in the office alone. Correct. And we don't know if A. A. Was the one that asked him to look it up. We don't know if A. A. Has some sort of underlying sexual deviant behavior that he asked the the the attorney. I mean, no, but we know that it happened. We do know that it corroborate. Correct. And and while that and because the defendant doesn't have an obligation to to produce any evidence, he doesn't have to testify himself. His defense lawyer is not able to elicit that information from him. Can't even question to question him about it because he doesn't know. The defense lawyer didn't even know A. A. Questioned about it. That's what I'm saying. A. A. Was not questioned about it. And if if the defense lawyer gets this information, let's say in a 302 or in a sheriff's deputy's report and he he sees it, he may ask his client saying he's charged with sexual assault. How did he interact with you? What? I mean, that's just a different area that a defense lawyer is not normally going to go into when defending someone on this type of issue. Okay, Counsel. Thank you very much. The case is submitted. We have four cases